# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| JAMES WESLEY McCULLERS<br>    LA. DOC #503240 | CIVIL ACTION NO. 3:10-cv-0420 |
| VS. | SECTION P |
| | JUDGE DONALD E. WALTER |
| LARRY COX, ET AL. | MAG. JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

*Pro se* plaintiff James Wesley McCullers, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on January 21, 2010. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Madison Parish Correctional Center (MPCC) on Treatment Plaint Road in Tallulah, Louisiana and he complains that he and others have been transferred to this facility from their prior placement as an act of retaliation. He complains that he is being denied the opportunity to participate in the work-release program, and, he complains that he is being denied appropriate medical attention. Plaintiff sued Madison Parish Sheriff Larry Cox, Buddy Caldwell (who he identifies as a half owner of MPCC) and the "Department of Corrections Madison Parish." He prayed for the firing of various corrections officers, for a transfer to a "medical facility" and for compensatory damages for pain and suffering and mental anguish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous.

### *Background*

On January 21, 2010, plaintiff filed a civil rights complaint in this court complaining about conditions of confinement, lack of medical care, and the quality and quantity of food served at the Madison Parish Corrections Center on Old Hwy. 65 South in Tallulah. While that complaint was pending, he was transferred to the Madison Parish Correctional Center on Treatment Plant Road in Tallulah and he complained about conditions at that facility as well. He also claimed that his transfer from the former location to the Treatment Plant Road location was an act of retaliation for having filed that lawsuit. On April 29, 2010, the undersigned authored a Report recommending dismissal of plaintiff's complaint as frivolous. [See *James Wesley McCullers v. Larry Cox, et al.*, No. 3:10-cv-0130 at Doc. 11] Plaintiff did not object to the recommendation and on May 24, 2010, Judge Walter adopted the Report and Recommendation and entered judgment dismissing the complaint as frivolous. [*Id.*, at Doc. 12]

Meanwhile, on March 4, 2010, plaintiff commenced the instant litigation by filing a *pro se* "Petition to Stop Movement of Work Release Elidgible [sic] Inmates." The hand-written complaint, signed by plaintiff and other inmates, complained that the inmates, who were currently housed at the Old Hwy. 65 South location were "getting moved to another building" and as a result, would no longer be eligible to participate in work-release. Plaintiff alleged that this transfer and the loss of work-release eligibility was a violation of the Fourteenth Amendment and plaintiff sought class action status. [Doc. 1]

On April 13, 2010, plaintiff submitted an Amended Complaint. He alleged that on March 3, 2010, "after filing complaint of prejudice," plaintiff was approached by two guards who ordered him to pack his belongings and moved him to Building 3. Plaintiff claimed that the transfer was in

retaliation for his previous lawsuit. He also claimed that all of the residents of his prior residence, A Dorm, failed a urine test after "... the Police bring in dope and cell phones..." Plaintiff further complained that only inmates who are related to the police or who purchase contraband from the police are allowed to participate in work-release. [Doc. 3]

On April 19, 2010, plaintiff submitted an application to proceed in forma pauperis. In the cover letter dated April 15th which accompanied that form, plaintiff claimed that on March 10th corrections officers searched his bunk and strip searched plaintiff. Plaintiff claimed to be in fear and requested an appointed attorney or an emergency injunction. [Doc. 6, p. 7]

On May 13, 2010, plaintiff submitted his complaint on the forms approved for filing civil rights complaints. [Doc. 8] He complained again of being moved from Building 2 (Old Hwy. South) to Building 3 (Treatment Plant Road) "due to me filing suit the first time." He also alleged that on April 25th he was moved again and an officer refused to give plaintiff the prostate medication he was provided at E.A. Conway Hospital on April 22nd. He also complained that he cannot urinate and that he does not drink water and that he has an unexplained bruise on his left side. He requested that the officers involved be fired and that he be transferred to a medical facility and awarded $20,000,000 for pain suffering and mental anguish.

He submitted an addendum to the complaint dated April 25, 2010. Therein he complained that the defendants continued to move him from building to building and from dorm to dorm. He stated that a Foley Catheter had been installed and that he had been afforded bottom bunk status, but, for at least one night, and as a result of a move, he was forced to sleep in the top bunk. He also complained that when he was moved to another dorm for bottom bunk status, his towel and clothes remained in his previous bunk and the corrections officers would not retrieve the towel or clothes

3

for him. He also complained that one of the officers refused to provide the food tray providing a special diet that was previously ordered. Finally, he complained that the corrections officers remained present in the room when he was examined by a nurse and breached patient confidentiality by reading his medical files.  In addition to this pleading, plaintiff provided copies of Inmate Grievance Forms dated April 9- 15, 2010 (complaining about not receiving his special diet) and, April 25, 2010 (complaining about missing pill call on that date due to the fault of a corrections officer).

### *Summary of Complaints*

Plaintiff's complaints and requests for relief may be summarized as follows:

1. Denial of work-release in violation of the Fourteenth Amendment and request for class action certification [Doc. 1];

2. Plaintiff's transfer to Bldg. 3 was an act of retaliation resulting from plaintiff's previous lawsuit [Doc. 3 and Doc. 8];

3. Inmates were provided drugs and contraband by corrections officers [Doc. 3];

4. Illegal strip search and request for appointed counsel [Doc. 6];

5. Medication denied on April 22 and unexplained bruise  [Doc. 8];

6. Top bunk status disallowed and loss of clothes for short period of time [Doc. 8];

7. Denial of diet for a short period of time [Doc. 8];

8. Breach of patient confidentiality [Doc. 8].

### *Law and Analysis*

### *1. Screening*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C.

4

§1983,  the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2).  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact.  *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if  it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits  alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous.  *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).  Federal courts, with regard to prisoner suits filed *in forma pauperis*, are authorized "... to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47

F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff filed an original complaint. Since the original complaint was deficient, plaintiff was instructed to amend his complaint to provide additional information. He was instructed to provide specific information and to provide the names of each defendant who violated his Constitutional rights. He was further instructed to describe what each defendant did and to provide the date and place of the occurrence. He filed an amended complaint and provided sufficient information to resolve his complaint. No further amendment is necessary.

### 2. Work Release

Plaintiff's original complaint alleged that he and others were unlawfully deprived of their right to participate in a work-release program when they were transferred to another facility. Plaintiff has neither a liberty nor property interest in the work release program and therefore his due process claims are frivolous. La. R.S.15:1111, the statute establishing the work release program, provides in part, "The Department [of Corrections] shall establish rules for the administration of the work release program and shall determine those inmates who may participate in the release program. Any convict sentenced to imprisonment at hard labor shall be eligible at any time during his sentence to participate in the work release program..."

In *Welch v. Thompson*, 20 F.3d  636 (5th Cir. 1994),  the Fifth Circuit determined that La. R.S.15:1111 entrusts the actual operation of the work release program to the LDOC.  The court further determined that the statute does not dictate to the LDOC who it must put on work release.

In short, the Fifth Circuit has held that "...La. R.S.15:1111 <u>does not create a liberty interest</u> subject to the Due Process Clause." *Welch v. Thompson*, 20 F.3d 636, 644 (5th Cir. 1994). Since the statute does not create a protected liberty interest for eligible prisoners, there can be no deprivation of a liberty interest protected by the due process clause of the Constitution, and therefore plaintiff cannot show that a constitutional right has been violated.

   To the extent that plaintiff also implies that he was deprived of a "property interest" as opposed to a liberty interest in violation of the due process clause, such an argument also lacks an arguable basis in law and fact.  In *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Supreme Court concluded that in order to have a property interest in a benefit, a person must have more than a "unilateral expectation" of it.  Rather, he must "have a legitimate claim of <u>entitlement</u> to it." *Id.* (emphasis supplied).   Thus, the "property interest" protected by the due process clause of the Fourteenth Amendment is defined by the concept of "entitlement," which in turn describes "the security of interests that a person has already acquired in specific benefits." *Id.* at 576, 92 S.Ct. at 2708. In other words, a person's interest in a benefit is a property interest only "if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit..." *Evans v. City of Dallas*, 861 F.2d 846, 848 (5th Cir. 1988. Plaintiff can point to no rule or understanding which entitle him to participate in the program. In any event, the Fifth Circuit has also held that prisoners have no property interest work-release employment. *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir.1995).Plaintiff is not entitled to participate in the Louisiana work-release program and therefore to the extent that he implies that he was denied either a liberty interest or a property right in violation of the Due Process Clause, such

7

claims are subject to dismissal as frivolous.[1]

### 3. Class Action

In order for a lawsuit to be certified as a class action under Rule of Federal Procedure 23(b)(3), the mover must prove that the four prerequisites found in Rule 23(a) and the two additional requirements in Rule 23(b)(3) are met. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623 (5th Cir.1999). Under Fed.R.Civ.P. 23(a), an action may be maintained as a class action if it meets the criteria of numerosity, commonality, typicality and adequacy of representation. *Mc.Grew v. Texas Bd. Of Pardons and Paroles*, 47 F.3d 158, 161 (5th Cir.1995). The requirements for Rule 23(b) "are 'predominance' and 'superiority': 'Common questions must predominate over any questions affecting only individual members', and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.' " *Mullen*, 186 F.3d at 624, citing *Anchem Products v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997), quoting Fed.R.Civ.P. 23(b)(3). The district court has wide discretion in deciding whether or not to certify a proposed class. *McGrew*, 47 F.3d at 161. Also, *Mullen*, 186 F.3d at 624.

Here, it is clear that plaintiff should not be permitted to litigate his claims as a class action. Plaintiff is a prisoner acting pro se; he has not demonstrated that he would be an adequate representative of his fellow inmates in a class action. *Caputo v. Fauver*, 800 F.Supp. 168, 169-170

---

[1] To the extent that plaintiff might imply a violation of equal protection, such claim fares no better. In order to state a claim of discrimination under the Equal Protection clause, plaintiff must demonstrate that he was treated differently than other similarly situated individuals and that the unequal treatment stemmed from a discriminatory purpose. *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir.2004). A discriminatory purpose "implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir.2001). Plaintiff has made no such showing and thus, any implied equal protection claim is also subject to dismissal as frivolous.

(D.N.J.1992); *Fymbo v. State Farm Fire & Casualty Co.*, 213 F.3d 1320, 1321 (10th Cir.2000); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir.1975); *Ethnic Awareness Org. v. Gagnon*, 568 F.Supp. 1186, 1187 (E.D.Wis.1983); Wright, Miller & Kane, Federal Practice and Procedure 2d: Civil § 1769.9, n. 12. See, *McGrew v. Texas Bd. of Pardons & Paroles*, 47 F.3d 158, 162 (5th Cir.1995). Further, the proposed class of prisoners does not meet the numerosity requirement. Finally, as shown above, the proposed class litigation is without merit since plaintiffs have no liberty interest in work-release. Plaintiff's motion for class certification must be denied.

### 4. Transfer and Retaliation

Plaintiff claims that his transfer was an act of retaliation. He raised an identical claim against these same defendants in his previous suit and the claim was dismissed as frivolous because it was determined that the claim lacked a basis in fact.  See *McCullers v. Cox, et al.*, No. 3:10-cv-0130. Title 28 U.S.C. §1915(a) enables an indigent prisoner to litigate an action *in forma pauperis* in federal court without the necessity of prepaying fees and costs; however, subsection (d) prevents abuse of the privilege by authorizing the court to "dismiss the case if  ... satisfied that the action is frivolous or malicious." See 28 U.S.C. § 1915; see also *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir.1986). The Fifth Circuit has held that "[a] district court may dismiss an *in forma pauperis* proceeding for frivolousness or maliciousness at any time, before or after service of process," and that a district court is "vested with especially broad discretion" in determining whether such a dismissal is warranted. See *Green*, 788 F.2d at 1119. If a civil action is a duplicative action arising from the same series of events and alleging many of the same facts as an earlier suit, such "[r]epetitive litigation of virtually identical causes of action is subject to dismissal under 28 U.S.C. § 1915(d) as malicious." See *Robinson v. Woodfork*, No. 86-3735 (5th Cir. May 22, 1987)

9

(unpublished order) (citing *McCullough v. Morgan*, No. 85-2022 (5th Cir. July 3, 1985) (unpublished order) and *Hill v. Estelle*, 423 F.Supp. 690 (S.D.Tex.1976)).

In short, an *in forma pauperis* complaint that merely repeats pending or previously litigated claims may be considered abusive and dismissed under the authority of section 1915(d). *Pittman v. K. Moore*, 980 F.2d 994, 995 (5th Cir.1993)("[I]t is 'malicious' for a pauper to file a lawsuit that duplicates allegations of another pending federal lawsuit by the same plaintiff").  Or, put another way, "When declaring that a successive *in forma pauperis* suit is 'malicious' the court should insure that the plaintiff obtains one bite at the litigation apple-but not more." *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir.1993).

Plaintiff's retaliation claim is duplicative of the claim raised in suit number 3:10-cv-0130 and therefore must be dismissed.

### 5. Inmates Provided Drugs and Contraband

Plaintiff alleged that inmates are provided drugs and contraband and then, when their urine screens are positive, they are denied the right to participate in work-release.  Plaintiff, however, did not allege that he was a victim or otherwise injured by the alleged actions of the prison guards.

Plaintiff invokes the jurisdiction of this court and seeks redress pursuant to 42 U.S.C. § 1983.[2]  That statute creates a cause of action against any person who, acting under color of state law, causes another to be deprived of a federally protected constitutional right. *Gomez v. Toledo*, 446

---

[2] 42 U.S.C. §1983 provides "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state ... subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured ...."

U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Phillips v. Monroe County*, 311 F.3d 369, 373 (5th Cir.2002), *cert. denied*, 539 U.S. 914, 123 S.Ct. 2274, 156 L.Ed.2d 130 (2003).

The jurisdiction of a federal court may be invoked when a plaintiff has suffered some threatened or actual injury as a result of an allegedly unconstitutional action. The judicial powers given to federal courts under Article III of the United States Constitution exist only to redress or protect against injury to a complaining party. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

Therefore, in order to have "standing"[3] to bring a claim in a federal court, a plaintiff must allege actual or threatened "injury in fact, economic or otherwise." *Association of Data Processing Orgs. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).  The facts as alleged by plaintiff do not establish that he suffered any injury as a result of the complained of acts of the defendants.

Plaintiff sustained no injury as a result of this activity and therefore he lacks standing to sue under §1983. His complaint should be dismissed as frivolous.

### 6. Search

In his application to proceed *in forma pauperis*, plaintiff alleged that he was the victim of an illegal search by prison guards. A inmate's rights are obviously diminished by the very fact of his incarceration and the needs and exigencies of the prison institution. Inmates, such as the plaintiff, by virtue of their circumstance, lose those rights that are necessarily sacrificed to legitimate

---

[3] "Standing defies precise definition, but at the least insists that the complained of injury be real and immediate rather than conjectural, that the injury be traceable to the defendant's allegedly unlawful conduct, and that relief from the injury must be likely to follow from a favorable ruling." *Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir.) (*en banc*), *cert. denied*, 506 U.S. 866, 113 S.Ct. 191, 121 L.Ed.2d 135 (1992)."

penological needs. *United States v. Lilly*, 576 F.2d 1240, 1244 (5th Cir.1978).

Nevertheless, the Fourth Amendment does require that "searches or seizures conducted on prisoners must be reasonable under all the facts and circumstances in which they are performed." *Lilly*, 576 F.2d at 1244. Since the administration's decisions and actions with regard to prison security are entitled to great deference from the courts, the burden of proving reasonableness has been described as a "light burden." *Id.* at 1245.

Furthermore, the Fourth Amendment's application in the prison context has been significantly limited by the Supreme Court in *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984) which held that prisoners have no justified expectation of privacy in their prison cells. *Hudson*, 468 U.S. at 526, 104 S.Ct. at 3200.

In *Hudson v. Palmer*, 468 U.S. 517, 529, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) the Supreme Court specifically approved the conduct by prison officials of "wholly random searches" or "routine shakedowns of prison cells" as "essential" to the effective security and administration of prisons. The search was not against the "law." Further, §1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right privilege, or immunity <u>secured by the Constitution and laws of the United States</u>. 42 U.S.C. §1983. Thus, an initial inquiry in a lawsuit filed under §1983 is whether plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation has been alleged, there is no cognizable claim under §1983. In this claim for relief, plaintiff does not suggest that the complained of search was unreasonable *per se*. He implies instead that he was placed in fear because the guards who conducted the search were African American males. Plaintiff's claim concerning the search of his person and property is frivolous.

12

### 7. *Appointment of Counsel*

Plaintiff also requested appointment of counsel. Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983.  "Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985).  Pursuant to 28 U.S.C. §1915(e)(1), federal courts are given the power to request that an attorney represent an indigent plaintiff.  In the case of *Mallard v. United States District Court for the Southern District*,  490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United States Supreme Court held that federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1) to make compulsory appointments.

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." See *Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989).  No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors: the type and complexity of the case; the plaintiff's ability to adequately present and investigate his case; the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978

13

F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; *see also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242. Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf. *See  Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is not excused from trying to procure counsel for himself.

Plaintiff has managed to file various pleadings and complaints setting forth his cause of action against the named defendants.  No special legal knowledge is required of plaintiff herein. Plaintiff's claims are not necessarily atypical of those often asserted in civil rights litigation and are not complex.  Finally, plaintiff has failed to demonstrate that he has attempted to procure counsel on his behalf.

Accordingly, plaintiff's request for appointment of counsel should be denied as the circumstances presented herein are not "exceptional" so as to  warrant the appointment of counsel. Moreover, plaintiff's request should be denied because plaintiff has failed to demonstrate any effort to secure counsel on his own behalf.

### 8. Medical Care

Plaintiff raised a number of medical care claims. He claimed that he was denied his medication on April 22, 2010; that he experienced an unexplained bruise at about the same time [Doc. 8]; that top bunk status was disallowed and that he was without clean clothes and a towel for a very short period of time [Doc. 8]; that he was denied his diet for a short period of time [Doc. 8]; and that the prison guards have breached doctor-patient confidentiality [Doc. 8].  While plaintiff raised medical care claims in the former lawsuit [see civil action number 3:10-cv-0130] these claims appear to raise additional claims and are therefore not duplicative. Nevertheless, plaintiff's medical care claims are manifestly frivolous.

14

Medical care claims when asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the defendant prison officials knew of and then disregarded an excessive risk to the plaintiff's health and safety. *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In other words, in order to prevail, the plaintiff must plead and then show "deliberate indifference" on the part of the defendants. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). "Deliberate indifference" in this context means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. Such deliberate indifference has been equated with "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Reeves v. Collins*, 27 F.3d 174 (5th Cir.1994). Thus, even "... the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5t Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

"[D]eliberate indifference is an extremely high standard to meet" and requires a showing that

"the officials 'refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)).

Plaintiff's allegations – accepted as true for the purposes of this analysis – fail to establish deliberate indifference on the part of any of the named defendants or anyone else.  He has not shown that defendants, or anyone else  "'refused to treat [him], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d at 756 (5th Cir.2001).

Here, the delays experienced by plaintiff were of short duration and apparently did not result in anything more than a *de minimis* injury if at all.  Plaintiff's medical care claims are clearly frivolous.

### *Order and Recommendation*

Plaintiff's request for appointment of counsel [Doc. 6] is **DENIED;** and,

**IT IS RECOMMENDED** that Plaintiff's request for class-action certification [Doc. 1] be **DENIED** and that plaintiff's civil rights complaint (42 U.S.C. §1983) seeking damages and injunctive relief be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's

objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*,** 79 F.3d 1415 (5th Cir.  1996).

In Chambers at Monroe, Louisiana, June 30, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

17